# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SARAH HAMM, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 05 C 227 |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Sarah Hamm's ("Hamm") petition for attorney's fees and costs ("Petition"). For the reasons stated below, we grant in part and deny in part the Petition.

## BACKGROUND

Hamm alleges that on January 19, 2002, she obtained a mortgage loan from Defendant Ameriquest Mortgage Company ("Ameriquest") which was secured by a mortgage on her residence in Markam, Illinois. Hamm claims that she sought out the loan in order to pay off her credit cards, make home repairs, and pay off the loan on a family member's car. Hamm alleges that based upon her discussions with Ameriquest employees prior to the closing on the mortgage, Hamm believed that she

1

was going to receive a fixed-rate loan, but that at the closing she discovered that she was receiving an adjustable rate loan that could have interest rates as high as 16.99%. Hamm also contends that the payment schedule for the loan payments was not adequately disclosed to her before closing. Hamm acknowledges that, despite her misgivings about the change in terms in the mortgage and the lack of clarity in the disclosures to her, Hamm signed all the closing documents. The closing documents included a Notice of Right to Cancel that informed Hamm of a three-day recission period during which she had a right to rescind the mortgage agreement. Hamm also signed a One Week Form that informed her of Ameriquest's policy of providing her with seven days to cancel the mortgage agreement. Hamm also signed a document that represented she had read and understood all the documents. Hamm claims that she was told at closing that she would receive a copy of the closing documents "in a couple of days" and that she received the documents two days after the closing. Hamm alleges that Ameriquest assigned her mortgage to Ameriquest Mortgage Securities, Inc., and the loan is being serviced by AMC Mortgage Services. Hamm brought the instant action seeking to have the mortgage rescinded based upon alleged deficiencies in the disclosures relating to her recission rights and the payment plan that were provided by Ameriquest in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. On September 27, 2005, we granted Ameriquest's motion for summary judgment. Hamm appealed the ruling and on December 19, 2007, pursuant to the mandate of the Seventh Circuit, we entered judgment in favor of Hamm. Hamm now moves to recover attorney's fees and expenses pursuant to Federal Rule

of Civil Procedure 54, Local Rule 54, and 15 U.S.C. § 1640(a)(3).

## LEGAL STANDARD

Pursuant to 15 U.S.C. § 1640, any individual that violates certain portions of TILA, such as 15 U.S.C. § 1638(a)(6), is liable "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635" for the sum of "the costs of the action, together with a reasonable attorney's fee as determined by the court. . . ." 15 U.S.C. § 1640(a)(3). Federal Rule of Civil Procedure 54 and Local Rules 54.1, 54.2, and 54.3 explain how a party may request attorney's fees and costs. Fed. R. Civ. P. 54; LR 54.1, 54.2, 54.3. A court should exclude from fee requests fees relating to "hours that were not 'reasonably expended' on the litigation." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999)(quoting in part *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). For a TILA case, the proper amount of fees are calculated by multiplying the "'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Strange v. Monogram Credit Card Bank of Georgia*, 129 F.3d 943, 945 (7th Cir. 1997)(quoting *Hensley*, 461 U.S. at 433). A party seeking the award of attorney's fees "bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon*, 175 F.3d at 550. A court can also "increase or decrease the amount in light of the *Hensley* factors, which include the time and labor required, skill needed, amount involved and results obtained, time limitations imposed by the case, experience, and reputation and

ability of the lawyers." *Strange*, 129 F.3d at 946.

## DISCUSSION

Hamm seeks $86,582.00 in fees and $6,684.12 in expenses. (Pet. 1). Ameriquest objects to the fees and expenses sought by Hamm, arguing that some of the fees are not recoverable and that the fees are excessive.

I.  Whether Fees are Reasonable

Ameriquest argues that the fee request is excessive since the hourly billing rates are above the market rate and Hamm's counsel devoted too many hours to certain appellate work.

A.  Hourly Rates

Ameriquest contends that certain hourly rates included in the billings presented by Hamm are excessive. A party is entitled to recover fees based upon a "'reasonabl[e] hourly rate,'" which is "based on the 'market rate' for the services rendered." *Spegon*, 175 F.3d at 554 (quoting in part *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996)). The movant bears the initial burden of showing the appropriate market rate, and "once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Id.* A market rate constitutes "'the rate that lawyers of similar ability and experience in the community

4

normally charge their paying clients for the type of work in question.'" *Id.* (quoting *Bankston v. Illinois,* 60 F.3d 1249, 1256 (7th Cir. 1995)).

Ameriquest argues that the rate of $280 per hour billed by Hamm's counsel for the work of Albert F. Hofeld ("Hofeld"), who was admitted to practice in Illinois in 2001, is an excessive rate. Ameriquest also contends that the rates between $400-$550 an hour for certain senior partners at the law firm representing Hamm are excessive. Ameriquest bases its objection in part on the rates charged by its counsel, which Ameriquest contends are much lower rates. Ameriquest contends that the most experienced partners should be awarded fees at a rate from $275 to $360 an hour and the lesser experienced attorneys should be awarded fees at around $190 an hour. (Ans. 7).

Ameriquest correctly points out that the documents presented by Hamm's own counsel indicate that the billing rates sought in the Petition are above the market rate. Hamm has presented an affidavit from one of Hamm's counsel, Daniel A. Edelman ("Edelman"), indicating fees that have been awarded to counsel's firm in comparable cases. Such prior awards are a good indicator of the proper market rate. *Spegon*, 175 F.3d at 555. The affidavit of Edelman shows that in comparable cases, senior attorneys of the firm representing Hamm, referred to as the "5 principals" of the firm were not awarded fees in excess of $425 per hour and were usually awarded fees less than $400 per hour. (Ed. Aff. Par. 30). In addition, the affidavit shows that less experienced associates such as Francis R. Greene, have been awarded fees around $190 an hour. (Ed. Aff. Par. 30).

A brief review of the billing records for this case presented by Hamm shows, for example, that Hamm was regularly billed in this case for partners at a rate of $550.00 per hour. (1/12/05, 3/22/05, 3/23/05, 6/13/06, 4/13/07 Entries). Also, a review of the billing entries show that Hamm was billed for work by associates, such as Hofeld, at $280 per hour. (3/22/05 Entry). Hamm has not offered sufficient justification for such higher than market rates, which are above those recovered in comparable cases.

Edelman does assert in a conclusory fashion in his affidavit attached to his reply brief that he and other partners at his firm charge in excess of $400 per hour. (Ed. Aff. Par. 34). However, Edelman's self-serving statement as to the rate he charges does not establish that the rate is the market rate. *Spegon*, 175 F.3d at 556 (stating that "[a]n attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services"). Edelman also offers in support certain transcripts and orders from other cases where attorney's fees were awarded to his firm, but the exhibits merely reference the total fees awarded and do not contain specific information such as the hourly billing rates that were approved. (Ed. Aff. App. A, B). Edelman also presents a printout from a web page of the United States Attorney's Office for the District of Columbia that contains a billing rate chart. (Ed. Aff. App. C). However, the explanatory notes beneath the chart specifically indicate that rates are premised on prior awards in the District of Columbia and thus it is questionable whether the chart would apply to the Northern District of Illinois, since the District of Columbia is not in the same general

community. (Ed. Aff. App. C). Regardless, the chart indicates that the top billing rate should be around $425 per hour and new associates should bill around $200 per hour. (Ed. Aff. App. C). Thus, the chart actually supports Ameriquest's position that Hamm's billing requests of $550 an hour for partners and $280 an hour for new associates are excessive. Hamm, in her reply, has not responded to Ameriquest's objections to the billing rates. Hamm instead merely points to her supporting exhibits which, as explained above, are inadequate and actually support Ameriquest's position. Therefore, based upon the record before us, we conclude that the appropriate market rate for the principal partners for the firm representing Hamm should be no greater than $450 per hour. In addition, the appropriate rate for Hofeld and comparable associates should be no greater than $210 per hour. As will be indicated below, Hamm will be required to file a memorandum that includes new fee calculations based upon these rates.

    B. Time Spent on Appellant's Reply Brief

Ameriquest contends that Hamm's counsel expended excessive hours on Hamm's appellant's reply brief. (Ans. 9) Hamm's counsel claims that counsel only devoted the hours to preparing the reply that were necessary to prepare an appropriate brief. Hamm's counsel indicates that during the appeal process in its appellee's brief, Ameriquest presented a new version of its arguments instead of reiterating the arguments that Ameriquest presented to this court for its summary judgment. Ameriquest did present new arguments on appeal, which could provide

justification for additional hours spent on the reply brief on the part of Hamm's counsel. For instance, in Ameriquest's appellee brief, Ameriquest devoted significant arguments to the functional and non-formalistic approaches to evaluating TILA disclosures that were explained in *Carmichael v. The Payment Center, Inc.*, 336 F.3d 636, 639 (7th Cir. 2003) and the analysis in other cases. (Appellee 12). However, none of those arguments were mentioned in Ameriquest's motion for summary judgment filed before this court and the cases were not even cited in Ameriquest's memorandum in support of its motion for summary judgment. (Mem. SJ 11-14). Ameriquest thus has not shown that the time spent by Hamm's counsel on the appellant's reply brief was unreasonable or excessive.

### C. Other Appellate Work

Ameriquest contends that Hamm's counsel in general expended too many hours working on the appeal. However, Ameriquest has failed to show that any of the hours expended are inappropriately billed to Ameriquest. Hamm does agree to strike from the fees request certain hours expended by her counsel on moot court preparation for oral argument before the Seventh Circuit, totaling $11,076.00 in fees. (Reply 13). Therefore, we will reduce the fee award by that amount.

## II. Secretarial Work

Ameriquest contends that Hamm improperly seeks to recover fees for secretarial work, which should not be considered part of attorney's fees. Ameriquest

argues that certain billing entries submitted by Hamm referred to as paralegal work indicate that the individual performed secretarial work such as filing and copying documents. Ameriquest argues that the general billing entries provided by Hamm do not include sufficient information to assess whether the work truly could be deemed paralegal work or whether it was strictly secretarial work, which is not recoverable by Hamm. Ameriquest does not dispute that Hamm can recover fees for paralegal services. (Ans. 5). A party can recover fees for paralegal services for "'work [that] was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.'" *Spegon*, 175 F.3d at 553 (quoting *People Who Care,* 90 F.3d at 1315). A party cannot recover fees for paralegal hours "spent on what are essentially 'clerical' or secretarial tasks." *Id.*; *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999)(indicating that paralegal fees can be recovered as part of attorney's fees). In addition, a court should not award fees for "hours spent on tasks that would normally not be billed to a paying client," or for "those hours expended by counsel 'on tasks that are easily delegable to non-professional assistance.'" *Spegon*, 175 F.3d at 550 (quoting in part *Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 942 (3d Cir. 1995)).

Although Ameriquest believes that certain billing notations for paralegal work could be construed to indicate secretarial work, Ameriquest fails to specify what billing entries are improper or even specify the amount at issue. Ameriquest states only that the "entries in their entirety total over 80 hours, and thus constitute charges of over $8,000," and again makes reference to unidentified billing entries that

9

amount to "over 80 hours of work." (Ans. 5, 9). Hamm has provided sufficient documentation to support the fees sought in her Petition and Ameriquest, having raised an objection, has failed to meet its burden to justify its objection. *See Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 2008 WL 199841, at *2 (7th Cir. 2008)(stating that "[i]t is not the court's responsibility to research the law and construct the parties' arguments for them"). Although Ameriquest fails to identify the disputed costs with any specificity, Hamm does concede that $1,110.00 of work on the billing statements submitted by Hamm involved tasks that could be construed as secretarial tasks and Hamm agrees to reduce the requested fees by that amount. (Reply 14). Therefore, we reduce the requested fee amount by $1,110.00.

III. Billing for Fees in Other Cases

Ameriquest contends that Hamm has improperly included fees in her petition that relate to other cases. Ameriquest contends that Hamm's counsel "has pending a number of recission cases and other cases in its office." (Ans. 4). According to Ameriquest, due to the generic entries on the billing statement, it is unclear whether the hours were devoted to work performed for this case or other cases. Ameriquest also states that Hamm's billing statement "has included billing entries in this case that must be part of a different action," which "renders the billings suspect as a whole." (Ans. 4). Hamm explains that some billing notations refer to another case because while this case was pending, an assignee of Ameriquest filed a foreclosure action against Hamm. Hamm's counsel needed to make certain filings in the

foreclosure action in order to protect her rights at issue in this case.  Other than the foreclosure action billing notations, Ameriquest presents no evidence that shows that the work referenced in the Petition was performed for other cases.  Ameriquest's concerns are mostly based upon speculation.  Hamm indicates that the hours in question were spent on this case and Ameriquest cites no precedent that would require Hamm to include the detailed entries that would satisfy Ameriquest.  Also, as indicated below, the billing hours and tasks referred to in the billing records appear to be appropriate based upon the history of these proceedings.  Therefore, Ameriquest's objection that some billings may have been improperly connected to other cases is without merit.

IV.  Apportion of Fees Between Issues

Ameriquest argues that Hamm should not recover all of the fees requested since some of Hamm's fees relate to issues on which Hamm did not prevail.  Hamm argued in this case that she was not properly informed that her mortgage payments were monthly payments and that the one-week cancellation/recession notice provided to her was misleading.  In granting Ameriquest's motion for summary judgment, we concluded, based on the undisputed evidence, that judgment should be entered as a matter of law on both issues in favor of Ameriquest.  Hamm appealed the ruling concerning the monthly payments issue, but did not appeal the ruling concerning the one-week cancellation/recission notice.  In determining what are reasonable attorney's fees a court should consider the "results obtained," by the plaintiff.

*Hensley*, 461 U.S. at 434. In regard to the results obtained, "a prevailing plaintiff is not entitled to fees for time expended pursuing unsuccessful claims that were unrelated to those claims on which the plaintiff ultimately prevailed." *Jaffee v. Redmond*, 142 F.3d 409, 413-14 (7th Cir. 1998)(stating that "'[u]nrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim'")(quoting *Hensley*, 461 U.S. at 434). In regard to the arguments concerning the monthly rates and the one-week cancellation/recission notice, the claims related to each notice deficiency are based upon the same mortgage transaction. In addition, TILA provides a plaintiff with recission as a remedy for a TILA notice violation and Hamm sought the same relief under either theory. Hamm could not obtain multiple recissions of the same agreement. 15 U.S.C. § 1635(g). Ameriquest also acknowledges that Hamm is entitled to seek a recission after the appeal. (Ans. 2). Thus, the alleged violations concerning the monthly mortgage payments and the one-week cancellation/recission notice, are related and could not properly be deemed issues that could have been raised in separate lawsuits. In addition, Ameriquest's attempt to carve out a percentage of fees based upon the percentage of issues pursued on appeal constitutes the type of "mathematical approach comparing the total number of issues in the case with those actually prevailed upon," which the Supreme Court rejected in *Hensley*. 461 U.S. at 435. Hamm achieved sufficient success under the law in this case to support her fee request. *See Spegon*, 175 F.3d at 557 (indicating that "the fee 'should not be reduced simply because the plaintiff failed to prevail on every contention

raised in the lawsuit'")(quoting in part *Hensley,* 461 U.S. at 435). Thus, Ameriquest has not shown that the fees should be reduced based upon the issues presented on appeal by Hamm.

V.  Proportion of Fees to Damages Award

Ameriquest contends that the fee request should be reduced because Hamm "seeks fees and expenses that exceed the value of any award by about, and at least two to one." (Ans. 2, 12). Ameriquest's argument is solely premised on its belief that Hamm "pursued her case for her own pecuniary interests." (Ans.2). However, Ameriquest provides no support for its belief and cites no precedent to support the proposition that the court should adjust the attorney's fees award to be proportional to the actual damages recovered by the plaintiff in cases such as this involving fee-shifting statutes and statutory penalty awards. (Ans. 2). The Seventh Circuit has not indicated that such a factor could be considered in a case involving a fee-shifting statute such as the one before us in this case. *Strange*, 129 F.3d at 946. Thus, Hamm's statutory remedies are not dispositive of the appropriate attorney's fees that can be awarded.

VI.  Other Costs and Expenses

Ameriquest argues that Hamm should not recover certain fees for her counsel's expenses, such as copying costs and postage costs. Ameriquest contends that Hamm has failed to explain why such expenses were necessary in this case.

13

(Ans. 5 ). Ameriquest argues that Hamm has failed to justify $162.69 for postage costs, $506.50 for fax costs, $3,500 in copying costs, $554.40 in transcript fees, $733.00 in filing fees, and $1,159.81 in computer legal research costs. (Ans. 5-6).

### A. Postage and Fax Costs

Ameriquest argues that Hamm improperly seeks to recover costs for both postage expenses and fax expenses relating to the same materials. Hamm agrees to reduce by $211.29 for postage costs and $506.50 relating to facsimile costs. (Reply 16). Therefore, we reduce the fee award by $717.79.

### B. Copying Costs

Ameriquest argues that Hamm has not shown that the copying costs sought were necessary. Hamm agrees to reduce the requested fees by $3,487.50 relating to copying costs. Therefore, we reduce the fee award by $3,487.50.

### C. Other Disputed Costs

Ameriquest argues that Hamm has not justified the request for costs related to transcript fees, filing fees, and computer legal research. We agree that Hamm failed to properly justify such costs in her Petition and Hamm fails to offer a sufficient explanation in her reply brief, stating only that she believes Ameriquest is "nitpicking." (Reply 16). However, it is Hamm that is seeking costs from this court and as the movant Hamm bears the burden of justifying all costs requested. *Strange*,

129 F.3d at 946 (stating in TILA case that "[t]he fee claimant bears the burden of substantiating the hours worked and the rate claimed"). Since Hamm has not sufficiently justified the costs for transcript fees, filing fees, and computer legal research, we will reduce the fee award by $554.40 for transcript fees, $733.00 for filing fees, and $1,159.81 for computer legal research.

## CONCLUSION

Based on the foregoing analysis, we grant in part and deny in part the Petition. The billing rates for the principal partners for the firm representing Hamm should be no greater than $450 per hour and the appropriate rate for Hofeld and comparable associates should be no greater than $210 per hour. The fee award is also reduced by the following amounts: (1) $11,076.00 in fees relating to moot court preparation, (2) $1,110.00 in fees for secretarial tasks, (3) $506.50 relating to facsimile costs, (4) $211.29 for postage costs, (5) $3,487.50 relating to copying costs, (6) $554.40 for transcript fees, (7) $733.00 for filing fees, and (8) $1,159.81 for computer legal research. Hamm is given until February 29, 2008 to submit to the court a billing statement relating to work done by senior partners at no greater than $450.00 per hour and for work done by Hofeld and comparable associates at no greater than $210.00 per hour.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 20, 2008